# IN THE MATTER OF P. L. RIVERA, Bankrupt.

---

San Juan, Bankruptcy, No. 252.

## SERVICE ON LOCAL MARSHAL.

Practice—Code.

1. Matters of practice are not always fully covered by a code of civil procedure, and much is left to judicial evolution.

Service—Porto Rico.

2. Getting a defendant into court is a matter of jurisdiction. Afterwards he must take cognizance of what goes on in court.

Roman Procedure—Judex.

3. Under the Roman procedure the pretor made up the issue and at first sent it for trial to a judex. This was later changed.

Spanish Practice—Law of Civil Procedure.

4. Under the Spanish Law of Civil Procedure a notice was served by a court official by reading the order to the defendant and delivering him a copy. The procedure, after the introduction of testimony, was changed by the American military government.

English Service—American Service.

5. The English practice was by royal writ. In America a copy is served or the writ is read, according to jurisdiction.

Chancery—Canon Law.

6. The chancery practice was by notice of a petition, which was copied from the Canon Law scheda; but chancery and common-law service are now assimilated.

Matter of Rivera.

Federal Receiver—Local Marshal.

        7. A Federal receiver should properly serve a local marshal with a copy of the order under which he demands possession of goods attached by the local court. The marshal is otherwise not in contempt.

Opinion filed February 25, 1920.

---

*Messrs. Francis & de la Haba* for receiver.

*Mr. Juan B. Huyke* for marshal.

HAMILTON, Judge, delivered the following opinion:

In the case at bar it seems that a local court had jurisdiction by attachment of assets of the estate which came into bankruptcy, and this Federal court made an order directing all parties having property of the estate to turn it over to the receiver herein. The receiver made a demand upon the local marshal, and the testimony differs as to exactly what occurred. The marshal contends that he asked for a copy of the order of this court, while the receiver and his attorney say that the marshal in effect declined to recognize the order of any court except the one under which he held the goods. In point of fact after a motion to show cause had been served upon him from this court the marshal reconsidered his action and turned over the goods. The question is, What should be done with the marshal?

The contention made on behalf of the marshal is that a copy of the order of this court should have been handed him so that he could make a return of it to the local court in explanation of any action he might take.

of justice.

Matter of Rivera.

The point does not seem to be covered by statute or by precedent, so far as shown to the court, and it will be necessary to decide it upon principle.

1. Apart from the substantive civil law of a case, there is the adjective law connected with procedure, and the present matter is of the latter class, procedure, so far as it relates to the method of getting a complaint into court and forming an issue to be tried. What the court does in this regard as well as in all matters pertaining to the trial is a matter of practice, and, unlike pleadings, questions of practice are not always fully covered by a code of civil procedure, such as that of Porto Rico. Questions of evidence constitute another branch of procedure, and are governed by a different law or code. Matters of practice are less often decided by courts and come down in precedents which are unwritten. The forms used in the courts are often of great antiquity.

2. How to get a defendant into court is a matter of great importance. After a party has been properly made defendant, further proceedings are less formal, because he must take cognizance of what goes on in the court. Getting a defendant into court, however, is a jurisdictional matter, which must be done properly in order for the case to proceed. There is no practice code in Porto Rico. The Code of Civil Procedure is adopted almost bodily from the western states, and yet the proceedings in the local courts are in Spanish, and many of the old Spanish terms are preserved. So far as the Federal practice has been prescribed by statute there is no difficulty; but the Federal practice is supposed to conform to the local practice (Rev. Stat. §§ 721, 914, Comp. Stat. §§ 1538, 1537, 5 Fed. Stat. Anno. 2d ed. p. 1123, 6 Fed. Stat. Anno. 2d ed. p. 21), and the dif-

ficulty is in determining what, under the circumstances, is the local practice. Perhaps, more properly, the point will be, What is the principle of the local practice? Is it Spanish, or is it American, or is it a mixture of both? The matter should be considered from both points of view, and it may be found that there is a common origin or common principle.

3. The Spanish procedure is probably closer to the ancient Roman than to that of any other country. England developed an independent system, due to the growth of the writ process in the royal courts, while in France the ecclesiastical courts deeply influenced the procedure of the royal courts. So that it becomes necessary to know what was the Roman practice.

Originally a defendant was dragged into court by the plaintiff, and in the course of time the pretor made up issues between them, sent to be tried by a separate lay judex, but it was a later imperial practice which descended to Spain. Under this cognitio the defendant was brought into court by state officials, and no longer by the plaintiff. After being brought into court, the issues were made up before the judge as before, although the judge himself thereafter tried the case and did not refer it to a layman.

4. The Spanish procedure was based upon the Roman, and presupposes the service of the defendant by a state official. It did not arise directly from the Roman procedure because of the Visigothic practice, which was in part a return to the old tribal procedure, of which the ancient Roman was but a specimen. But from the twelfth century, when the Siete Partidas was instituted, the Code and Digest of Justinian was the model, and has so continued down almost to the present time. We need only take up in detail the Law of Civil Procedure in force just

Matter of Rivera.

before the war between the United States and Spain. The Law of Civil Procedure dates from 1855, but was put in the shape of a code in 1881 and extended to Porto Rico four years later. The Spanish law is very formal and pays great attention to documents, especially those of an official nature. The Law of Civil Procedure draws a distinction between contentious and voluntary jurisdictions, but the original proceedings by which parties were brought into court had much in common. Parties in general had an agent who required a power of attorney and was called a procurador. The attorney at law who acted in court was called an abogado. Law of Civil Procedure, art. 2. Judicial proceedings must be written upon stamped paper, and judgments signed. Arts. 248 and 250. Notice of all orders, rulings, and judgments shall be given to the parties to the action. Art. 260. The method of service is minutely prescribed, as follows:—

"Art. 262. Notices shall be served by the clerk, secretary, or official of the chamber authorized therefor, who shall read in full the order to the person upon whom service is made, and shall at the same time deliver to him a true copy thereof, signed by the recording clerk, even though said copy should not be demanded, stating the matter to which it refers."

It will be observed, therefore, that proper Spanish service includes reading the order to the party affected and the delivery of a true copy. On the other hand, when the residence is known and the party is not found, service may be made by writ (cédula from the Latin scheda, schedula, leaf of paper) to be delivered to the nearest relative, member of his household or servant over fourteen years of age, and if no one is found, then delivery shall be made to the nearest neighbor. Arts. 266–268. In case the

residence is not known, service may be had by posting the writ at the usual public place and publishing it in the official gazette. Art. 269. These provisions are applicable to citations, summons, and requirements, with appropriate modifications. Although notifications made otherwise than above are null, nevertheless, if the person affected appears, the proceedings from his appearance are valid.

The Spanish Law of Civil Procedure is not generally regarded as now in force, but it was declared in force by the Federal military authorities up to the part as to the taking of testimony, which begins with title 7, art. 313, as to the hearing of cases and therefore after the above citations. It is not clear that this particular order has ever been revoked by subsequent legislation so far as relates to the point under discussion. The point there involved was that the method of taking testimony was changed from depositions to oral examination. The new Code of Civil Procedure does not cover all matters of practice, and some matters of procedure are found also in the Civil Code. Thus reivindicación is preserved in the Civil Code and is still enforced in effect. P. R. Civil Code, §§ 354, 466; Spanish Civil Code, Arts. 348, 464. This procedure goes directly back to the Digest of Justinian. Berio v. Gay, 9 Porto Rico Fed. Rep. 224, 228.

5. There is no question in this case as to notice of proceedings had after the defendant has been brought into court. Even under the Spanish law this was done by notice given in open court. What is to be looked at here is the method of getting the defendant into court in the first instance. It is quite true that in the case at bar the marshal was not strictly a defendant, but he was a quasi defendant for present purposes. The re-

Matter of Rivera.

ceiver claimed to have the right to certain goods, and the marshal either claimed them or at least was in the possession of them; and so the proceeding, whatever its nature, must be between the receiver as actor and the marshal as reus. For some purposes a proceeding in bankruptcy is in equity, and for some purposes it is in rem; but for the purposes of the present proceeding there is no reason to treat it otherwise than one inter partes. Under the English practice from the time the royal courts were firmly established the defendant was brought into court by service of a writ, which has been the distinguishing feature of the Anglo-American procedure ever since that time. The sheriff or other executive officer of the court could arrest a man just as well as he could attach property; in fact the word "attachment" is still used as applicable to the arrest of a person in contempt. But the matter at bar relates to civil procedure, one initiated apart from any question of arrest, criminal or semi-criminal. The usual notice to a defendant under the English practice has been time out of mind reading the writ to him, leaving a copy with him, or both, and as seen above this is also the Spanish practice. In Illinois it has been held that, in the absence of statutory direction as to the method of making personal service, process is to be served by reading the original to the defendant. The usual methods prescribed by statute are as above,—reading the writ to the defendant as in Indiana, Maine, Pennsylvania, Iowa, and Colorado, or delivering him a copy as in California, Georgia, Massachusetts, Mississippi, Nebraska, South Carolina, Texas, Wisconsin, and Ohio. In Louisiana there is special provision as to the use of French and English. Sometimes both methods are used, and sometimes the petition accompanying the writ is also to be read. Force is not to be

Matter of Rivera.

used in civil service. There are some close cases on the subject of service, as where the defendant runs away and the sheriff runs after him reading the process; where the defendant, to avoid being served, puts on his wife's clothes; and where the sheriff enters a house peaceably and is ordered out by the wife. In such cases the service is nevertheless proper, the officer doing what is reasonable under the circumstances, and the defendant receiving actual notice. 40 Century Digest, Process, §§ 76–82. It cannot be said as between reading a writ and leaving a copy that there is any common-law rule. The matter is statutory and the statute is to be followed. 32 Cyc. 458 and notes. In Porto Rico under § 93 of the Code of Civil Procedure "the summons must be served by delivering a copy thereof . . . (6) in all other cases to the defendant personally." Proof of service is by certificate of the officer making it. The point is that, in order to constitute good personal service of any kind, the defendant must, in some substantial way, be apprised that service is intended. Hiller v. Burlington & M. River R. Co. 70 N. Y. 223. If a defendant refuses to receive a copy, the officer must inform him of the nature of the paper and of the purpose to make service, depositing the paper in some appropriate place in his presence. An offer to read it is sufficient if the defendant refuses to hear it read. The substance of the service is actual notice, and if the defendant prevents this by his own act, the service nevertheless is good. Arrowsmith v. Ingle, 3 Taunt. 234, 128 Eng. Reprint, 93; Martin v. Raffin, 2 Misc. 588, 21 N. Y. Supp. 1043. Leaving a copy at defendant's residence, however, is not sufficient unless the statute so provides, as in Spain; but this method is now frequently provided by law. 32 Cyc. 462.

Matter of Rivera.

The marshal of this court was put on the stand and testified that the practice always observed is to hand a copy of the writ or other paper in question to the defendant, although where it was a matter of attachment and there was nobody present to receive the paper he would take possession of the property first and afterwards hand the paper to the party interested.

6. Originally there was a difference between the procedure at common law and in chancery. That at common law was by virtue of the King's writ, which was directed to a defendant and served upon him by the sheriff. On the other hand the proceeding in chancery was by petition to the chancellor, a notice of which was served upon the defendant. The chancery procedure was borrowed directly from that of the old Canon Law, which in turn came from the procedure of the later Roman Empire. Maitland, Equity and Forms of Action, 315, 328. The Canon Law has remained practically the same down to the present time, as is shown by the Codex Juris Canonici, put in effect by the present Pope. After the libel or petition is authorized a citation is issued by the judge, and it is served denuntiatur upon the defendant. This is effected by a notice, scheda (from which comes the Spanish cedula) designating the nature of the suit, plaintiff, defendant, and date. The scheda is executed in duplicate, one being served upon the defendant and the other retained for the record. The actual service, if possible, is by an officer, cursor, of the court. Codex, Canons, 1711–22. The proceedings in the court of chancery, therefore, were based upon those of the ecclesiastical court, but in the course of time, especially in America, it has been made almost identical with that of the common-law courts, with the result that the service is made by the sheriff or marshal, as the case

Matter of Rivera.

may be, and there is no reason for any practical difference in the procedure in this regard. The proceeding in bankruptcy is expressly declared in the Bankruptcy Law to be one in equity, and so far as matters now before the court are concerned both may be considered as practically the same as at common law.

7. It seems to the court to be proved by the evidence that the receiver verbally notified the marshal that this court, acting in bankruptcy, had directed goods in the hands of the marshal to be turned over to the receiver, and further told him that a copy of the writ would be handed him if desired. In point of fact no copy was handed him, and none was offered him.

As the local marshal was not a party to any proceeding in court, and, on the other hand, was responsible to his own court for proper custody of the property intrusted to him, it would seem only right that he should have a copy of the order or writ requiring him to turn over the property to what is not a foreign court, but at least is a different court from the one which constituted him custodian in the first instance.

The contention of the receiver is that it might well become necessary to assume immediate possession, and that the delay caused by the marshal might seriously injure the estate. It is difficult to see how this would be so, provided only the receiver took the precaution to have copies of the writ with him. It is not decided that such copies should be certified by the clerk, as it might be this would not be possible in all cases at a distance from the court. It would seem to be right that the marshal, under the practice obtaining both in common and civil law countries, should be given a copy of the writ or order under which the receiver demands possession.

It would follow, therefore, that the refusal of the marshal

Matter of Rivera.

to deliver possession when in point of fact such copy was not tendered him was within his rights, and at all events, whatever might be the nature of the words which passed between the marshal and the receiver, could not be considered a contempt of this court. Unless a copy was tendered the marshal, he could not be considered as committing contempt of the order. An order of court is a matter of record, and should not be served upon an officer of another court except by tendering him a copy.

It follows, therefore, that the marshal is not in contempt, and the rule must be discharged.

It is so ordered.